## Bisbee Estate

*J. S. Jiuliante*, for appellant.

*B. Walker Sennett*, for Commonwealth.

ROBERTS, P. J., February 23, 1954.—This is an appeal by Myrtle G. Bisbee, executrix of the estate of William J. Bisbee, deceased, from the assessment for transfer inheritance taxes on a parcel of real estate of decedent who died March 27, 1952.

Decedent's husband and son had been engaged in the farm implement business in Union City as a partnership since 1945. Decedent was active in the daily operation and management of the firm. The establishment was housed in the premises which are the subject of this appeal. Although the record title to the realty remained in decedent (until October 31, 1951) it was treated and recorded as a partnership asset on their books and reported for Federal income tax purposes as partnership property, from 1945 through 1951.

In October of 1951 negotiations were entered into for the sale of the partnership business, and on November 6, 1951, the business, and all assets exclusive of this parcel of real estate, were sold. During the negotiations for the sale of the business, decedent on October

31, 1951, executed a deed to the realty conveying a one-half interest to his son and his wife and the remaining one-half interest to himself and his wife.

Decedent was 67 at the time of his death. The evidence indicates that he had enjoyed good health and was active in the business at the time of its sale and the conveyance of the realty. Decedent was not aware of any ailment, and his family physician testified he made no complaint of any kind during a recent routine physical check-up, and his examination found decedent in good health. Decedent sold the business because he wanted to retire and travel, and the evidence indicates that he proposed to take a motor trip south, which he undertook in January of 1952. He planned on his return in the spring to continue to sell farm machinery on a commission basis. While on his trip south, decedent became suddenly ill during the middle of February, and the evidence is that it was the first indication to decedent, his family and physician, that he was suffering from a critical ailment.

Section 1 of the Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301, provides inter alia:

"A tax shall be, . . . imposed upon the transfer of any property . . . in the following cases . . . (c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death.

"If such transfer is made within one year prior to the death of the grantor, vendor, or donor of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, it shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this clause."

The transfer of October 31, 1951, was made within one year prior to the death of testator and is presumed to have been made in contemplation of death.

"By the term 'in contemplation of death' is not meant on the one hand the general expectancy of death which is entertained by all persons, for every person knows that he must die . . . On the other hand, the meaning of the term is not necessarily limited to an expectancy of immediate death or a dying condition . . . The term 'in contemplation of death' involves something between these two extremes. Nor is it necessary, in order to constitute a transfer in contemplation of death, that the conveyance or transfer be made while death is imminent, while it is immediately impending by reason of bodily condition, ill health, disease, or injury, or something of that kind. But a transfer may be said to be made in contemplation . . . if the expectation or anticipation of death in either the immediate or reasonably distant future is the moving cause of the transfer,": Shwab v. Doyle, etc., 269 Fed. 321, 328.

In Rea v. Heiner, etc., 6 F. 2d 389, 392, "contemplation of death" within the meaning of the act was construed as "a present apprehension, from some existing bodily or mental condition or impending peril, creating a reasonable fear that death is near at hand; and that, so arising, it must be the direct and animating cause, and the only cause, of the transfer. If this apprehension, so arising, is absent, there is not that contemplation of death intended by the statute, especially when another adequate motive actuating the gift is shown"; further on quoting from Meyer et al., etc., v. United States, 60 Ct. Cls. 474, " '. . . there must be at least a belief that it (death) is to be expected in the very near future, rather than in the usual course of events, and in this state of mind, in

this belief, in the near approach of death, must be found the motive for the conveyance' ''; and at another point, quoting from Spreckles v. State, 30 Cal. App. 363, 158 Pac. 549, the court stated succinctly: ''. . . the expectation of death must be the direct, specific, and immediate animating cause of the transfer.''

In Wanamaker's Estate, 8 D. & C. 569, 573, the court indicated that by '' 'in contemplation of death', we mean, first, that death is contemplated . . . as an event that is, in the circumstances, definitely imminent in the near future; and, second, that this contemplation of death exists as the impelling motive of the transfer . . .''

In the absence of sufficient evidence pointing to the contrary the presumption becomes absolute and the assessment will stand. Here, however, the presumption is met and overcome by circumstances showing that decedent had transferred the realty as part of a plan to sell the business and divide partnership assets. The evidence does not establish that the anticipation of death was uppermost in his mind, or that it was ''the impelling motive of the transfer; the direct, specific and immediate animating cause, the direct and animating cause, and the only cause,'' or even ''the moving cause.'' We find and hold that the transfer assessed for tax was part of decedent's plan to sell the business and was not in contemplation of his death. Under the view we take of this matter we need not concern ourselves with the technical questions suggested in the dissolution of the partnership and distribution of assets because we find that the entire transfer was not in contemplation of death.

### Order

And now, to wit, February 23, 1954, the appeal from the appraisement of the transfer of October 31, 1951, is sustained and the assessment thereon is set aside.